out of the distribution of drugs. It is, of course, within the power of Congress to create a strict liability crime in some situations. No constitutional issue has been raised about strict liability in this appeal. However, it would indeed require a casual approach to the trial rights afforded defendants under our Constitution if this court were to allow a trial court to determine that a defendant who pled guilty merely to the physical distribution of a drug (with a corresponding sentence of less than 20 years) is subject to a sentence of up to life imprisonment because the court believed, only by a preponderance of the evidence, that death resulted from that crime regardless of the defendant's intent to harm. The exercise of such extensive power by the trial court in its role as sentencer rather than as factfinder illustrates quite clearly the erosion of the jury trial and the right to have elements of an offense decided beyond a reasonable doubt that the Court so explicitly sought to protect in *Jones*.

We need not examine whether, if the preponderance of the evidence had been the appropriate standard, the district court's factual decision that Leonard Rebmann's death was caused by the distribution was clearly erroneous given our decision to remand for resentencing pursuant to the appropriate standard as outlined above. We therefore REVERSE defendant Rebmann's sentence and REMAND for a determination of whether Leonard Rebmann's death was caused by the distribution of heroin beyond a reasonable doubt.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0282P (6th Cir.)
File Name:  00a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

            v.                                    No. 98-6386

NANCY JO REBMANN,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 97-00050—Thomas G. Hull, District Judge.

Argued:  April 18, 2000,

Decided and Filed:  August 28, 2000

Before:  MERRITT and DAUGHTREY, Circuit Judges;
HAYNES, District Judge.[*]

———————————

### COUNSEL

**ARGUED:**    David  F.  Ness,  FEDERAL  DEFENDER SERVICES  OF  EASTERN  TENNESSEE,  INC., Chattanooga, Tennessee, for Appellant.  Dan R. Smith,

———————————————

[*] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee. **ON BRIEF:** David F. Ness, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee.

————————

## OPINION

————————

MERRITT, Circuit Judge.  Defendant Nancy Jo Rebmann pled guilty to distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) pursuant to a plea agreement.[1]  That agreement provided that Rebmann understood that her maximum term of imprisonment was 20 years for her guilty plea of distribution, but that if the district court found that death resulted from the distribution, she would be sentenced to a term of 20 years to life.  After a sentencing hearing, the district court determined that, by a preponderance of the evidence before it, the death of defendant's ex-husband Leonard Rebmann was caused by the heroin distribution.  Rebmann was sentenced to a term of 292 months (24 years and 4 months).  Without the enhancement for resulting death, Rebmann's guideline range would have been 24 to 30 months.  Rebmann appeals her sentence on the grounds that the determination that Leonard Rebmann's death was caused by the distribution was clearly erroneous, and that the 1999 Supreme Court decision *Jones v. United States*, 526 U.S. 227 (1999), dictates that the factual

————————

[1] The indictment in this case charged defendant Nancy Jo Rebmann with distribution of heroin under 21 U.S.C. § 841(a)(1) and made additional reference to the penalty statute, section 841(b)(1)(C), in what appears to be a standard citation.  Under the rule first announced in *Jones v. United States,* 526 U.S. 227 (1999), and solidified in *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), this indictment is probably technically deficient with respect to the "if death results" provision found within and among the many possible sentencing factors of section 841(b)(1)(C).  The parties have not raised that issue as part of this appeal, however, and we decline to address it under those circumstances.

Our duty, in light of this clear dictate from the Court, is to examine whether the sentencing factor in this case was a factual determination, and whether that determination increased the maximum penalty for the crime charged in the indictment.  We find that the statute at question here today, 18 U.S.C. § 841, provides for a factual determination of whether the distribution of drugs caused death or serious bodily injury, and that the factual determination significantly impacts the sentence imposed by the court, increasing the maximum penalty from 20 years to that of life imprisonment.  We conclude that pursuant to her plea agreement, Rebmann waived her right to a jury trial of the issue of whether her distribution of heroine caused the death.  However, we find that Rebmann did not waive the right to have a court decide any remaining elements of the offense beyond a reasonable doubt, as opposed to making those determinations by a mere preponderance of the evidence.  Because the provisions at issue are factual determinations and because they increase the maximum penalty to which Rebmann was exposed, we find that they are elements of the offense which must be proven beyond a reasonable doubt.

Although we are not required to examine the structure of the statute to determine the legislature's intent, we note that the determination that the "if death results" provision of this statute is an element of the offense is bolstered by the structure of the statute in this case.  Eighteen U.S.C. § 841 provides, on its face, that the distribution of a listed drug is the offense which must be proven and that the sentence is determined with relation to whether death or injury resulted from the offense, as discussed above.  This structure fails to provide one of the defendant protections which was present in the federal carjacking statute at issue in *Jones*.  The federal carjacking statute provided that *intent* to cause serious bodily injury or death must be proven, but that the actual proof of the injury or death was to be a sentencing determination.  In the drug distribution statute, 18 U.S.C. § 841, the intent to cause injury or death to another person is omitted from the statute altogether.  On its face, the statute is, in effect, a strict liability statute with respect to the injury or death of another arising

noted that "we cannot say that courts have typically or traditionally used firearm types (such as 'shotgun' or 'machingun') as sentencing factors, at least not in respect to an underlying 'use or carry' crime." *Id.* at 2093. A contrast was drawn between non-traditional sentencing factors, such as firearm enhancements, and those sentencing factors which are typically left to the discretion of a judge, such as determinations of recidivism or characteristics of the offender such as lack of remorse, or "special features of the manner in which a basic crime was carried out (e.g., that the defendant abused a position of trust or brandished a gun)." *Id.* at 2094. Finally, the Court concluded that the "difference between the act of using or carrying a 'firearm' and the act of using or carrying a 'machinegun' is both substantive and substantial--a conclusion that supports a 'separate crime' interpretation." *Id.* at 2094.

The *Apprendi* case made a radical departure from the *Jones* and *Castillo* cases. In *Apprendi*, the Supreme Court bypassed the step of determining legislative intent, holding that there was no ambiguity in the New Jersey statute in question and that therefore "[t]he question whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt is starkly presented." *Apprendi v. New Jersey*, 120 S.Ct. 2348, 2355 (2000). Having freed itself from the strictures of legislative intent, the Court then held, quoting its prior decision in *Jones*, that "'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" *Id.* at 2355 (quoting *Jones*, 526 U.S. at 243). The Court rested this ruling on the historical absence of a distinction between "elements" and "sentencing factors," noting that at the time of our country's founding all facts and circumstances which constituted an offense were included in the indictment and proven before a jury. *See id.* at 2356.

determination as to whether death resulted should have been determined beyond a reasonable doubt rather than by a preponderance of the evidence. Because we agree that *Jones* and the subsequent Supreme Court decisions elaborating on *Jones* compel a finding that the death resulted beyond a reasonable doubt, we remand this case for resentencing.

First, we address whether elevating the government's burden of proof from that of preponderance of the evidence to reasonable doubt could in fact effect the outcome of this case. We find that the proof in this case is of such a nature that is possible for the court to have determined that Leonard Rebmann's death was a result of the distribution by a preponderance of the evidence, but that the same court may not have been able to reach the same decision beyond a reasonable doubt. Leonard Rebmann ingested the heroin supplied by his wife along with several other narcotic substances. There was expert testimony that indicated that Leonard Rebmann's death would not have been caused by the other substances he ingested alone. In addition, there was testimony that although it was probable that the heroin alone also did not cause Rebmann's death, heroin is an unusually unpredictable substance and has been known to cause death even when ingested in small quantities. The testimony of the doctor who performed the autopsy indicated that the cause of death was a multiple drug overdose, of which heroin was the most lethal drug. In view of this evidence, it is possible that the court would have come to the conclusion that it could not find that Leonard Rebmann's death was caused beyond a reasonable doubt by the defendant's distribution of heroin in light of Leonard's Rebmann combination of the heroin with the other narcotics.

Next, we examine whether the court employed the correct standard which it determined that Leonard Rebmann's death was caused by the defendant's distribution by a preponderance of the evidence. In *Jones v. United States*, 526 U.S. 227 (1999), the Supreme Court addressed the issue of whether the federal carjacking statute, 18 U.S.C. § 2119, provided a scheme for the punishment of one crime with three attendant

sentencing provisions, or whether the statute actually prohibited three separate crimes, each requiring a jury determination and proof beyond a reasonable doubt. After considering the vague language in the statute, which did not clearly delineate whether the provisions at issue were elements or merely sentencing provisions, the Court concluded that it should construe them as elements of the crime in order to avoid possible constitutional problems. *See Jones*, 526 U.S. at 232-38. The Court did not indicate what would have been the outcome of the case if Congress had been more clear in delineating the provisions in question as merely sentencing provisions. The Court did, however, go on to discuss in great detail the serious constitutional implications of categorizing factual determinations as sentencing provisions and thereby eroding the protection of trial by jury and altering the burden of proof in cases where no jury trial was requested. The first question before us is whether the *Jones* decision allows us to consider the constitutional problems in this case even in a situation where the statutory language is not so vague that it requires a ruling as to the intent of Congress with respect to the sentencing provisions. Although Congress was fairly clear in delineating that the "if death results" provision is a sentencing provision, we do not believe the *Jones* decision requires us to end our inquiry at this point. The factual situation at hand so clearly parallels the constitutional problems before the Court in *Jones* that we conclude that we must consider the constitutional ramifications of classifying these factual determinations as sentencing provisions, regardless of the clarity of Congress's intent in classifying them as sentencing provisions. In addition, two more recent Supreme Court decisions, *Castillo v. United States*, 120 S.Ct. 2090 (2000), and *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), both reinforce our conclusion.

The federal carjacking statute at issue in *Jones,* 18 U.S.C. § 2119, provided that, if the prosecution proved both intent to cause death or serious bodily harm and the actual transport or receipt of a motor vehicle which was taken by force, violence, or intimidation, then 15 years imprisonment was the applicable punishment. In addition, the statute provided that,

if serious bodily injury resulted, the period of incarceration rose to 25 years, and if death resulted the punishment rose to life imprisonment or a sentence of death. The Supreme Court held that allowing a court to make a factual determination, such as whether serious bodily injury was caused by the crime or by some other factor, which in term increased the penalty for a crime, seriously implicated the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment. The Court noted that those constitutional provisions have historically suggested that "any fact (other than prior conviction) that increased the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt." *See Jones,* 526 U.S. at 243 n.6. In fact, the *Jones* Court warned of a set of circumstances similar to the factual scenario before us today when it stated that "in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment." *Jones,* 526 U.S. at 244.

In *Castillo v. United States*, 120 S.Ct. 2090 (2000), the Supreme Court again addressed the issue of factual "sentencing factors" which increase a defendant's punishment after proof before a judge based upon a preponderance of the evidence. In that case, the defendants were indicted of the crime of murdering federal officers. By statute, found at 18 U.S.C. § 924(c), the court was to determine whether the defendants used or carried a firearm, which provided for an increase in punishment of 5 years. If the court determined that particular firearms were used, such as machine guns, destructive devices, or firearms with silencers or mufflers on them, the sentence increased to a mandatory thirty years. The court specifically instructed the jury that it was the province of the court, as a part of the sentencing proceedings, to make the determination concerning whether the defendants "used" firearms and the types of firearms employed. In evaluating this statute in light of the *Jones* decision, the Court again examined the literal language and structure of the statute itself. In coming to the conclusion that the factors at issue were "elements" rather than "sentencing factors," the Court