have been plausible.  The decision that the weapon was only capable of semi-automatic fire was generous.  A rational trier of fact could and did conclude that the weapon was capable of semi-automatic fire; we therefore affirm Sykes's conviction and sentence on the § 924 count.

## C.   Offense-Level Enhancements

Finally, Sykes argues that the court inappropriately increased his offense level for his leadership role in the offense and for obstruction of justice.  This argument is foreclosed because of his clear waiver of his right to appeal the judge's sentencing determination. There is no reason whatsoever that Sykes's waiver of his right to appeal the sentence on these issues should not be respected; there is no standard of proof issue here.  Consequently, we affirm. *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996).

## III

For the above reasons, we AFFIRM Sykes's conviction and sentence.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0199P (6th Cir.)
File Name: 02a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
　　*Plaintiff-Appellee,*

　　*v.*                                             No. 00-5377

TIMOTHY L. SYKES,
　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 97-00126—John T. Nixon, District Judge.

Argued:  April 26, 2002

Decided and Filed:  June 6, 2002

Before:  RYAN, BOGGS, and COLE, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  David L. Cooper, Nashville, Tennessee, for Appellant. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:**  David L. Cooper, Nashville, Tennessee, for Appellant.  Sunny A. M. Koshy, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

BOGGS, Circuit Judge.  Federal prisoner Timothy Sykes challenges his sentence, based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  He also claims that there was insufficient evidence to support the district court's finding that he used a semi-automatic assault weapon in conducting the bank robbery, and that the district court erred in applying several sentencing enhancements.  We affirm Sykes's conviction and sentence.

I

Timothy Sykes and three accomplices robbed the SunTrust Bank in Nashville, Tennessee on July 3, 1997.  During the robbery, Sykes brandished an assault weapon.  Sykes did not fire; he pointed the weapon at bank customers and robbed them, while his accomplices robbed the bank proper.  A video surveillance camera photographed Sykes using the weapon. From the photographs, it was impossible to tell whether the gun had full automatic fire capability or semi-automatic single-shot capability.  The robbers left the bank with over $28,000 in cash.  The robbers got into a stolen car, which they then abandoned for two getaway cars, one of which was Sykes's Cadillac.  They drove to Sykes's house, where they divided the loot.

Sykes and the others were arrested and charged.  At first, Sykes interfered with the investigation. He attempted to pass a note to a relative, telling him what to say to authorities. During his first interview, Sykes denied all involvement with the robbery, and claimed that his car was in the shop that day. Sykes had his girlfriend, Shemicia White, obtain a false car repair invoice for his Cadillac that corroborated his story that the car was in the shop on the day of the robbery.

Sykes eventually changed his story and pled guilty to the robbery charges.  The plea agreement contained a waiver of

The case agent testified that during proffer sessions, Sykes stated that the gun had "AR-15" on the side.[1]  Sykes selected the gun from among a number of weapons that had been stolen from a major marijuana dealer's house.  Sykes stated that he originally had four clips with the weapon.  However, Sykes claimed that he had never seen the rifle fired, and that the weapon was unloaded during the robbery.

Sykes's expert testified at the sentencing hearing. He noted that it was impossible to tell whether the gun was capable of full-automatic fire from the videotape, because of the tape's poor quality.  He did not see external pieces that would render the weapon fully automatic.  He also testified that it was possible for the weapon to be capable of full-auto fire without external pieces.

Mr. Sykes's argument at the sentencing hearing was, therefore, that the court could not rule out the possibility that the weapon was a replica.  His defense counsel argued that the robbers were "idiots" who possibly could have brought non-firing weapons on a bank robbery.

This argument is incorrect.  The government need show only that the weapon was more likely than not capable of semi-automatic fire.  There is little doubt that bank robbers who had taken great care in the planning and execution of their raid would bring effective weaponry. Sykes's argument that the weapon could have been a non-firing replica defies belief, and is certainly not the most likely scenario.

The judge's decision favored Sykes heavily; a finding that the weapon was more likely than not a machine gun would

---

[1] An AR-15 is a military-style assault rifle, like the M-16, but manufactured by Colt for sale to civilians.  Sykes described the weapon as an M-16 to co-defendants.  Automatic assault rifles are generally illegal; Semi-automatic assault rifles such as the AR-15 are also now illegal after September 1994, 18 U.S.C. § 922(v)(1); however, previously-owned semi-automatic weapons are grandfathered, under 18 U.S.C. § 922(v)(2).

*Rebmann* is easily distinguished from the current case. Here, Sykes both waived the right to have a jury consider the firearms charge, and waived the right to have that determination made on a reasonable doubt standard. There was no clear error in the district court's finding; accordingly, we affirm.

B.   Sufficiency of the Evidence

Sykes questions whether the district court had sufficient evidence to determine that the gun he was carrying was capable of semi-automatic fire. The standard of review for insufficient evidence claims is whether, after viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989).

18 U.S.C. § 924(c)(1) provides penalties for use of three categories of weapons, each bearing mandatory consecutive sentences for use of a firearm in relation to a bank robbery: machinegun (a weapon capable of fully automatic fire), semi-automatic assault weapon, and normal firearm. The mandatory consecutive sentence is 30 years for machineguns, 10 years for semi-automatic assault weapons, and 5 years for any other firearm.

The determination of the district court, that the weapon brandished by Sykes during the SunTrust robbery was at least capable of semi-automatic fire, was supported by sufficient evidence. Sykes's co-defendants described the weapon as automatic. James Sykes testified at the hearing that the defendant had showed him the weapon and called it a machinegun. James Sykes testified that the defendant told him that the weapon would keep firing as long as the trigger was depressed, and that he would shoot his way out of the bank if the police arrived.

appeal "on any ground whatever, in exchange for the concessions made by the United States in this plea agreement." The waiver did not apply to one aspect of Count 3, the weapons charge. The plea bargain stated that the court was to decide, by a preponderance of the evidence, the type of weapon Sykes used during the robbery.

The gun used by Sykes in the robbery was never recovered. James Sykes (Sykes's brother) told FBI agents that the weapon was a fully automatic assault rifle. Co-defendant Antouine Jones told agents that the defendant had told him the weapon was automatic. When the issue was tried, Sykes's expert claimed that there was no way to determine whether or not the weapon was capable of automatic fire from the pictures of the robbery. The expert also claimed that he was unable to rule out the possibility that the weapon was a replica.

Sykes also entered an unsworn written statement at the sentencing hearing with respect to the weapon. He stated that he had never fired it, and did not know whether it was capable of either automatic or semi-automatic fire, nor whether or not it was a replica.

The judge found that the preponderance of the evidence showed that the weapon was a semi-automatic rifle. The court therefore imposed the mandatory 10-year consecutive sentence required by statute.

The plea agreement also noted that the government would seek a three-level aggravating role sentencing enhancement for Sykes's leadership role in the offense, and a two-level obstruction-of-justice sentencing enhancement. Sykes was free to oppose the offense-level enhancements, but waived his right to appeal those determinations. The judge imposed offense-level enhancements for Sykes's leadership role in the offense, and for obstruction of justice.

Despite the waivers, Sykes appeals his sentence and conviction, arguing that they violate *Apprendi*, and were not

supported by sufficient evidence. Sykes also appeals the application of the offense-level enhancements.

## II

### A.   *Apprendi* and Waiver

Constitutional challenges to sentences are questions of law subject to *de novo* review. *United States v. Smith*, 73 F.3d 1414, 1417 (6th Cir. 1996). However, a constitutional right may be knowingly and voluntarily waived. *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995). A district court's determination that a waiver was knowingly and voluntarily made is reviewed for clear error. *Ibid.*

18 U.S.C. § 924(c)(1) requires a mandatory consecutive sentence for anyone who uses or carries a firearm during a crime of violence. The statute prescribes different mandatory consecutive sentences based on the type of firearm involved. Prior to *Apprendi*, § 924 determinations were made by a judge on a preponderance standard. Sykes is correct that, absent waiver, the § 924 weapons charge should have been heard by a jury and proven beyond a reasonable doubt. *Castillo v. United States*, 530 U.S. 120 (2000).

However, informed waivers are valid. *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996). The plea bargain stated:

> As to Count Three [the weapons charge], the parties agree to litigate the type of firearms which were used and carried by the defendant or his co-conspirators in relation to the bank robbery. *The parties agree that the sentencing judge shall make the determination of what category of firearms was used and carried in the bank robbery by a preponderance of the evidence standard.*

JA at 74 (emphasis added). The plea bargain continued:

> The court's factual findings as to the most serious category of firearm used and carried in the bank robbery

> shall govern the imprisonment sentence applicable to this count. If the court finds that one of the firearms was a machinegun, the defendant is subject to a thirty year mandatory consecutive sentence on Count Three. If the court finds that one of the firearms was a semi-automatic assault weapon, the defendant is subject to a ten year mandatory consecutive sentence on Count Three. If the court finds that neither a semi-automatic assault weapon nor a machinegun was used and carried in relation to the bank robbery, the defendant is subject to a five year mandatory consecutive sentence on Count Three.

JA at 74-75. The plea bargain also stated: "As noted below, the defendant has the right to appeal the court's factual findings on the most serious type of firearm used and carried in the bank robbery." JA at 75.

However, the plea bargain limited Sykes's right to appeal the sentence on any other issue:

> The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence in the offense level as determined by the court . . . on any ground whatever . . . .

JA at 75.

Despite this language, Sykes relies on *United States v. Rebmann*, 226 F.3d 521 (6th Cir. 2000), to argue that his waiver was not voluntary or knowing. In that case, the Sixth Circuit held that a waiver was not sufficiently voluntary when the defendant waived her right to a jury trial on an element without waiving the right to have that element proven beyond a reasonable doubt. *Id.* at 525. The *Rebmann* court found that although the defendant voluntarily waived her right to a jury trial, she "did not waive the right to have a court decide any remaining elements of the offense beyond a reasonable doubt, as opposed to making those determinations by a mere preponderance of the evidence." *Rebmann*, 226 F.3d at 524.