**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul DUNN, III, Defendant–Appellant.**

No. 01–3619.

United States Court of Appeals,
Sixth Circuit.

Dec. 3, 2002.

Before BOGGS, SUHRHEINRICH, and CLAY, Circuit Judges.

PER CURIAM.

Paul Dunn was indicted with fifteen co-defendants for various drug-related offenses. On December 21, 1999, he entered into a plea agreement and pled guilty to Count I of the indictment, charging conspiracy to distribute and possess with the intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 846.

On that day Dunn stipulated to the following facts under oath: He and others conspired to distribute marijuana and cocaine; he and a co-defendant arranged for drugs to be sent from California to Cincinnati by UPS, FedEx, and various other means; he would travel frequently from California to Cincinnati to supervise the distribution process; he caused over 15 kilograms and hundreds of pounds of marijuana to be sent to Cincinnati; and he would have others wire the proceeds back to California.

More than six months later, Dunn filed a motion to withdraw his guilty plea, one month after the court had appointed substitute counsel, and after he had seen the presentence report ("PSR") that had been prepared. The district court denied his motion. During his sentencing hearing, the district court found him responsible for distributing more than 15 kilograms of cocaine. Dunn was sentenced to 197 months of imprisonment and five years of supervised release.

Dunn appeals to this court from the final judgment of guilt and his sentence. He argues that the district court abused its discretion by not allowing him to withdraw his guilty plea. We affirm.

I

"The withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court." *United States v. Head*, 927 F.2d 1361, 1375 (6th Cir.1991) (quoting *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir.1987)); *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir.1988). This court, therefore, reviews the district court's decision to deny a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Bashara*, 27 F.3d 1174, 1180 (6th Cir.1994), *superseded on other grounds by statute as stated in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir.2000).

"If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed. R.Crim.P. 32(e). In determining whether a defendant has shown a "fair and just reason," this court considers several factors, including:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181. Unless the defendant has presented a fair and just reason for vacating his plea, prejudice to the government need not be established or considered. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991).

## II

Regarding the first and second factors, Dunn argues that the amount of time between his plea and his motion to withdraw was not excessive, and because he moved to withdraw his guilty plea only one month after he had been appointed new counsel, he presented a valid reason for failing to move for withdrawal earlier in the proceedings. His motion to the district court stated:

> It was not until the Pre–Sentence Investigation Report became available that defendant Paul Dunn III truly became aware of the consequences of the Plea Agreement. It was not until then that he began to request the withdrawal of

his plea, which could not formally occur until new counsel was appointed and able to review the matter.

JA at 76–77. As to the third factor, Dunn argues that while he does not deny his involvement in the conspiracy, he disputes the amount of drugs for which he has been held responsible. Regarding the fourth factor, he argues that he did not have time to consider properly the plea agreement and that he made his decision to plead guilty hastily. He offered no argument as to the next two factors, stating that the previous four outweigh them. Regarding the seventh factor, he maintains that the government would not be prejudiced by a withdrawal of the plea, as his guilty plea was not entered into on the day of trial, and the government would not have to recall witnesses.

His affidavit to the district court in support of his motion states that he had always disputed the amount of cocaine attributed to him; that he was assured by the United States Attorney and his own appointed lawyer that if he agreed to the plea agreement, he "would have the right level at the end"; and that he was led to believe that if he entered into the plea agreement he would receive seven to ten years in prison, but would receive thirty or more years if he went to trial. JA at 79–80.

The district court noted in its order denying Dunn's motion to withdraw his guilty plea that it was not concerned with the amount of time that passed between the date of Dunn's guilty plea and the date he made his motion for withdrawal. However, the district court stated that Dunn had not presented a valid reason for moving for withdrawal when he did. The district court went on to conclude that "[f]undamentally, a defendant should not be permitted to attempt to withdraw a guilty plea because he subsequently disap-

proves of the PSR." JA at 86. The district court stated that Dunn understood that the court and the probation department were not bound by the plea agreement when calculating his sentence and that the difference between the amount of cocaine to which he pled guilty and the amount attributed to him in the PSR did not affect the calculation of his sentence.

As to the third factor, the district court observed that Dunn admits his guilt to the underlying charge, and merely disputes the amount of drugs attributed to him. Moreover, he stated to the court under oath that he had caused the distribution of 15 kilograms of cocaine.

The district court also found that Dunn's assertion that he had not had time to consider his guilty plea was not accurate. The court stated that it had taken "great pains during the change of plea hearing to ensure that Mr. Dunn knew the consequences of his plea, and that he had seriously considered his decision to plead guilty." JA at 89.

### III.

The purpose of Rule 32(e)

is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty."

*Bashara,* 27 F.3d at 1181. (quoting *Alexander,* 948 F.2d at 1004).

■ Dunn has not presented a "fair and just reason" for allowing him to withdraw his guilty plea. Dissatisfaction with, or even complete surprise at, the probation officer's conclusions in a PSR does not constitute a fair and just reason. During his change of plea hearing, Dunn told the court that he understood that the court and the probation department were not bound by the plea agreement. Subsequent to Dunn's guilty plea, the probation officer preparing his PSR found, pursuant to U.S.S.G. § 3B1.1(a), that Dunn was an organizer or leader of the conspiracy, and that his prior criminal record placed him in Criminal History Category IV.[1] These two factors led to the markedly longer sentence Dunn received compared to what he claims he had been assured during his plea negotiations that he would receive.

Dunn does not claim he is innocent of the crime to which he pled guilty. He does claim that he does not agree with the amount of drugs for which he was found to be responsible. However, Dunn stipulated under oath that he was responsible for distributing at least 15 kilograms of cocaine. The district court stated in its opinion that "Mr. Dunn has provided the Court no reason to believe that he was somehow confused, pressured, or that he lied to the Court when he confirmed that he had

---

1. The district court established Dunn's base offense level at 34 because it found him responsible for distributing at least 3,000 kilograms and less than 10,000 kilograms of marijuana (the equivalent of at least 15 kilograms and less than 50 kilograms of cocaine). *See* U.S.S.G. § 2D.1.1. The court increased his offense level by four because he was determined to be an organizer or leader of the conspiracy, *see* U.S.S.G. § 3B1.1(a), and reduced his offense level by three levels because he accepted responsibility for his criminal conduct and provided complete information to the government regarding his involvement in the conspiracy. *See* U.S.S.G. § 3E1.1(a) and (b). This resulted in an adjusted base offense level of 35. With a Criminal History Category of IV, the sentencing range was 235–293 months. The court departed downward by 38 months in order to account for time Dunn had served for conduct relevant to the conspiracy offense. The district court sentenced him to 197 months of imprisonment.

caused the distribution of over 15 kilograms of cocaine." JA at 88.

Dunn has not presented a fair and just reason for withdrawing his guilty plea. Moreover, he does not claim that he is innocent of the crime to which he pled guilty. The district court did not abuse its discretion in denying Dunn's motion to withdraw his guilty plea.

## IV

Dunn also filed a motion to file a supplemental pro se brief, which was denied. He subsequently filed a motion to reconsider this denial. We will grant this motion. However, his pro se argument is without merit.

He makes an argument based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Supreme Court in *Apprendi* held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348 (quoting *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

■ Dunn submitted written objections to the PSR challenging the amounts of drug quantities attributed to him, and claims that because of these objections he has preserved his *Apprendi* challenge. However, he did not raise any constitutional objections nor did he challenge the propriety of the evidentiary standard used by the district court in determining drug quantity. Therefore, this court reviews Dunn's *Apprendi* claim for plain error. Fed.R.Crim.P. 52(b). We cannot correct an error pursuant to Rule 52(b) unless there is an error that is plain under current law and that affects substantial rights. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir.1997). If these conditions are met we may exercise discretion and notice the error, if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544.

Dunn claims the district court did not tell him that the type and quantity of drugs are essential elements of his offense, and argues he was entitled to a jury determination of these elements. He cites *United States v. Rebmann*, 226 F.3d 521 in support of his claim. In *Rebmann*, this court found that when the defendant pled guilty to distribution of heroin, she did not waive her right to have the enhancement element of whether death resulted from her heroin distribution proved beyond a reasonable doubt. *Rebmann*, 226 F.3d at 524–25 (6th Cir.2000). Dunn pled guilty to conspiracy to distribute marijuana and cocaine. He suggests that the court should have sentenced him for distribution of marijuana under 21 U.S.C. § 841(b)(1)(D) instead of for distribution of cocaine under § 841(b)(1)(C),[2] and contests the district court's finding of the amount of drugs attributable to him.

This case is distinguishable from *Rebmann*. Dunn stated under oath during the colloquy at his change of plea hearing that he caused over 15 kilograms of cocaine and hundreds of pounds of marijuana to be sent to Cincinnati. In *Rebmann*, there is no indication that the defendant admitted in open court that death resulted from her heroin distribution.

---

2. Dunn was actually sentenced under 21 U.S.C. § 841(b)(1)(A).

As to Dunn's *Apprendi* claim regarding type of drugs, his 197–month sentence exceeds the 60–month maximum authorized by 21 U.S.C. § 841(b)(1)(D) for any measurable amount of marijuana. Indeed, there was error, it was plain, and it affected Dunn's substantial rights. However, this error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002). Dunn stated under oath in open court that he was responsible for over 15 kilograms of cocaine. Moreover, the evidence presented at the sentencing hearing was overwhelming that Dunn was responsible for distributing cocaine and not just marijuana.

As to Dunn's *Apprendi* claim regarding quantity of drugs, there was no error in the district court's sentence. Dunn's 197–month sentence did not exceed the 240–month maximum authorized in 21 U.S.C. § 841(b)(1)(C) for any measurable amount of cocaine.

## V

For the foregoing reasons, the judgment of the district court is AFFIRMED.