*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ARTHUR TYLER,

               *Petitioner-Appellant,*

   *v.*

BETTY MITCHELL, Warden,

               *Respondent-Appellee.*

No. 02-3896

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-01881—David A. Katz, District Judge.

Argued: April 27, 2005

Decided and Filed: July 20, 2005

Before: GIBBONS, ROGERS, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Richard M. Kerger, KERGER & KERGER, Toledo, Ohio, for Appellant. Michael L. Collyer, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Richard M. Kerger, KERGER & KERGER, Toledo, Ohio, Charles M. Boss, BOSS & VITOU CO., Maumee, Ohio, for Appellant. Michael L. Collyer, UNITED STATES ATTORNEY, Cleveland, Ohio, Daniel R. Ranke, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

     JULIA SMITH GIBBONS, Circuit Judge. Petitioner Arthur Tyler was convicted by an Ohio jury of aggravated murder in 1983 and was sentenced to death. Tyler sought a writ of habeas corpus in federal district court, but the district court denied his petition in its entirety. The district court granted a certificate of appealability on two issues: (1) whether Tyler's waiver of mitigation evidence (other than his own unsworn statement) was constitutionally valid; and (2) whether sufficient evidence supported Tyler's conviction and sentence for aggravated murder. Tyler appeals these issues. For the reasons set out below, we affirm the district court's denial of Tyler's petition.

1

# I.

The facts underlying Tyler's conviction are fully recounted in the Ohio Supreme Court's decision on direct appeal. *See State v. Tyler*, 553 N.E.2d 576, 580-82 (Ohio 1990). A brief summary of the facts will suffice here. On March 12, 1983, Tyler, Leroy Head, and Anthony Gillis were taking drugs in Scott Hill's apartment. After Gillis suggested that they try to cash Hill's welfare check and split the money, Tyler (according to Head's trial testimony) suggested that, as an alternative way of obtaining money, they should rob Sander Leach, a produce vendor. Gillis had a gun, but no bullets, so Tyler took the gun and went with Head to obtain bullets from another man. Tyler loaded the gun. Next, they went to a store where Tyler borrowed five cents from a customer and bought a brown paper bag in which he concealed the gun. Tyler and Head then went to Leach's produce van. Head testified that he asked Leach if he had any lemons, and Leach climbed in the back of the van. Tyler followed Leach into the van while Head stayed outside. Head testified that he heard two shots, looked inside the van, and saw Tyler going through Leach's pockets. Head said, "Come on, let's go," and ran through the parking lot, through a field, and across a nearby park.

Two witnesses saw a thin African-American man (matching Head's description) run toward the park, and one testified that she heard shots just before she saw the man. The other witness testified that, five or six minutes after seeing the tall, thin man run toward the park, she saw a shorter, heavier man (matching Tyler's description) come around from the rear of the produce van and run up the street. Head went back to Hill's apartment, where Gillis was waiting. According to Gillis's trial testimony, Tyler arrived with Head and said, "I had to burn him, the old man was silly, I had to burn him." Head and Gillis both testified at trial that Tyler threatened them by suggesting that if they told anyone about the killing then "somebody else was going to come up dead." Head testified that Tyler confessed in Hill's apartment "that he killed the man."

Gillis and Head were arrested two days later, and they made several statements to police that tended to implicate themselves in the shooting of Leach but were inconsistent with their (later) trial testimony. At trial, they explained that they made these various statements because of Tyler's threats against them. For his part, Tyler testified that he was in a nearby meat market trying to cash Hill's welfare check, and upon leaving the store, he heard two shots and ran toward the street. However, the store owner did not recognize Tyler or remember seeing him in his store trying to cash a check on the day of the murder.

An Ohio jury convicted Tyler of the aggravated murder of Sander Leach and recommended the death penalty. On August 31, 1983, the state trial court adopted the jury's recommendation and sentenced Tyler to death. On appeal, the Ohio Court of Appeals reversed Tyler's conviction and sentence, holding that Tyler received ineffective assistance of counsel. *State v. Tyler*, No. 47533, 1984 WL 6408 (Ohio Ct. App. Dec. 27, 1984). After a second trial, Tyler was again found guilty by a jury and sentenced to death. The Ohio Court of Appeals then affirmed Tyler's conviction and sentence, *State v. Tyler*, No. 51696, 1988 WL 13188 (Ohio Ct. App. Feb. 11, 1988), as did the Ohio Supreme Court, *State v. Tyler*, 553 N.E.2d 576 (Ohio 1990). Tyler filed a state petition for post-conviction relief. The trial court summarily dismissed the petition; the Ohio Court of Appeals affirmed the dismissal, *see State v. Tyler*, No. 71785, 1998 WL 598531 (Ohio Ct. App. Sept. 10, 1998); and the Ohio Supreme Court denied leave to further appeal on January 20, 1999.

On June 11, 1999, Tyler filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, presenting sixty-four claims for relief. The respondent filed a return of writ on August 2, 1999, and Tyler filed a traverse to the return of writ on June 6, 2001. In an order entered on May 20, 2002, the district court denied Tyler's petition in its entirety. The district court nonetheless granted a certificate of appealability ("COA") on two issues: (1) whether Tyler's waiver of mitigation evidence (other than his own unsworn statement) was constitutionally valid; and (2) whether sufficient evidence supported Tyler's conviction and sentence for aggravated murder. Tyler

appealed and requested that this court expand the COA to include numerous additional grounds for relief. This court denied Tyler's request on December 11, 2003, and the United States Supreme Court denied Tyler's petition for a writ of certiorari.

## II.

In an appeal of a habeas proceeding, this court reviews the district court's conclusions of law and mixed questions of law and fact *de novo*, and we review its findings of fact for clear error. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). The habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct. *See* 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Since Tyler filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of that Act apply to this case. *Frazier v. Huffman*, 343 F.3d 780, 787 (6th Cir. 2003), *cert. denied*, 541 U.S. 1095 (2004).

Under AEDPA, 28 U.S.C. § 2254(d), an application for writ of habeas corpus should not be granted unless the previous state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of United States," or (2) involved an "unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." The "contrary to" clause allows a federal habeas court to grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## A.

Tyler first argues that, despite his clearly-expressed instructions to have no mitigation evidence (other than his own unsworn statement) introduced on his behalf during sentencing, his counsel was required to introduce such evidence anyway. Tyler raised this issue on direct appeal, claiming that permitting a capital defendant to withhold mitigating evidence from the jury defeats the state's interest in a reliable sentencing determination. *See Tyler*, 553 N.E.2d at 583; *see also Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion) (noting that the trier of fact in a capital case should "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death"); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion) ("[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment...requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.") (citation omitted). The Ohio Supreme Court rejected Tyler's argument, noting that the constitutional requirement that mitigation be considered is rooted solely in a desire to protect the defendant's interests. *See Tyler*, 553 N.E.2d at 584. "That interest is protected by giving the defendant an opportunity to introduce the mitigating evidence available to him, and requiring the sentencer to consider it. But where he chooses to forgo that opportunity, no societal interest counterbalances his right to control his own defense." *Id.* (citation and footnote omitted); *see Lockett*, 438 U.S. at 604 (plurality opinion).

The district court found that the Ohio Supreme Court's determination was neither contrary to nor an unreasonable application of established Supreme Court precedent. This conclusion was sound. As a general matter, it is not necessarily unconstitutional for a capital defendant or his counsel to fail to produce mitigating evidence. *See Wiggins v. Smith*, 539 U.S. 510, 533 (2003) ("[*Strickland v. Washington*, 466 U.S. 668 (1984)] does not require counsel to investigate every

conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case."); *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); *Wallace v. Ward*, 191 F.3d 1235, 1247 (10th Cir. 1999) ("Failure to present mitigating evidence is not per se ineffective assistance of counsel."); *Workman v. Bell*, 178 F.3d 759, 770-71 (6th Cir. 1998) (holding that capital defendant's counsel was not constitutionally ineffective for determining for tactical reasons not to present mitigation evidence to the jury). Moreover, this court has squarely held that a capital defendant's counsel is not constitutionally ineffective when a competent defendant prevents the investigation and presentation of mitigation evidence. *Coleman v. Mitchell*, 244 F.3d 533, 544-46 (6th Cir. 2001). It follows that the Constitution does not prohibit a competent capital defendant from waiving the presentation of mitigation evidence. *See Chandler v. United States*, 218 F.3d 1305, 1319 n.25 (11th Cir. 2000) ("While Petitioner is correct that capital defendants have a right to present just about any evidence in mitigation at the sentencing phase, this right is the right to be free of governmental interference with the presentation of evidence."); *Singleton v. Lockhart*, 962 F.2d 1315, 1322 (8th Cir. 1992).

Tyler does not claim that he was incompetent to assist in his defense; nor does he deny that it was solely his own insistence that prevented his counsel from presenting mitigation evidence that counsel had prepared and was ready to present. The state court transcript clearly shows that this decision was Tyler's own and was contrary to his counsel's advice. He cannot now be heard to complain that his instructions, which the trial court expressly confirmed by questioning Tyler, should have been ignored. The Ohio Supreme Court's determination of this issue was neither contrary to nor an unreasonable application of clearly established federal law.

**B.**

Tyler also argues that while the district court addressed his insufficient evidence claim as it related to the guilt phase of his trial, the district court failed to address his claim that there was insufficient evidence to support a death sentence. Tyler seeks a remand on this basis.

In his petition for a writ of habeas corpus, Tyler states that his "convictions and sentences are void because there was insufficient admissible evidence to conclude that Petitioner committed the crime of aggravated murder or either of the specifications attached to Count One of the Indictment." The remainder of Tyler's argument under this section of the petition, however, makes clear that he was arguing insufficient evidence only as to the guilt phase of his trial. For example, he argues that "the guilty verdicts were against the manifest weight of the evidence" and the state trial court improperly denied Tyler's motions for acquittal and to set aside the verdict. Tyler argued penalty-phase insufficiency of the evidence only in his traverse to the respondent's return of writ, raising for the first time in that document an argument that "[t]he aggravating circumstance that Petitioner was found guilty of was not supported by the evidence beyond a reasonable doubt. The State failed to establish that the single aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt."

Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it. *See United States v. Barrett*, 178 F.3d 34, 46 n.6 (1st Cir. 1999); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Nor is the issue properly before this court. Even if we were to assume, though, that Tyler's penalty-phase insufficient evidence claim is properly before this court, the claim has no merit. In his brief, Tyler points out the conflicting statements made by the state's

witnesses, asserting that "there was conflict [sic] evidence as to whether a jury when considering all of the evidence relating to the single aggravating circumstance pointed out by the State...would have found the mitigating evidence sufficient to require the imposition of a prison term rather than death." It is unclear how this argument differs from Tyler's insufficient evidence argument with regard to the guilt phase, since the evidence referred to by Tyler is the same evidence presented at the guilt phase. Regardless, "[t]he standard of review for insufficient evidence claims is whether, after viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sykes*, 292 F.3d 495, 498-99 (6th Cir. 2002). Tyler's insufficient evidence argument rests on an allegation involving witness credibility, which is clearly the province of the jury and not this court. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993) (noting that, in a habeas corpus action, a federal court should not make its own subjective determination of guilt or innocence); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (noting that attacks on witness credibility constitute a challenge to the quality, but not the sufficiency, of the government's evidence).

Moreover, the Ohio Supreme Court independently reweighed the evidence presented during the penalty phase and agreed with the jury that the death penalty was appropriate in Tyler's case. *See Tyler*, 553 N.E.2d at 596-97. The court noted that "[t]he only mitigating circumstances presented by appellant were his claim of innocence and his argument that life imprisonment would be, for him, as bad as death. We think these considerations are entitled to little weight against the single aggravating circumstance of which appellant stands convicted," which was committing aggravated murder while committing aggravated burglary. *Id*. Tyler has failed to explain how the Ohio Supreme Court's resolution of this issue was either contrary to or an unreasonable application of clearly established federal law.

### III.

For the foregoing reasons, we affirm the district court's order denying habeas corpus relief.