545 F.2d 1241
 39 A.L.R.Fed. 798
 Harry CLARDY, Petitioner-Appellant,
v.
Edward LEVI, Attorney General of the United States, et al.,
Respondents- Appellees.
Phillip L. TUCKER, Petitioner-Appellant,
v.
Edward LEVI, Attorney General of the United States, et al.,
Respondents- Appellees.
 Nos. 75-3069, 76-1259.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 24, 1976.
Rehearing and Rehearing En Banc Denied Feb. 1, 1977.
 
 Stephen Strong (argued), of Bendich, Stobaugh & Strong, Seattle, Wash., for petitioner-appellant.
 John S. Obenour, Asst. U.S. Atty. (argued), Tacoma, Wash., for respondents-appellees.
 Before BROWNING and SNEED, Circuit Judges, and WILLIAMS,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Appellants Harry Clardy and Phillip L. Tucker appeal to this court to set aside the disciplinary measures which officials of the Bureau of Prisons at McNeil Island Federal Penitentiary imposed on them pursuant to administrative convictions of assault on another inmate.[1] They based their appeal, primarily, on their belief that the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (1970) (APA), provides them with procedural rights which they were not afforded. Appellant Tucker also asserts that prison officials denied him procedural due process by refusing his request for legal counsel during the prison disciplinary hearings which led to his punishment. The district court dismissed their separate petitions for writs of habeas corpus. For reasons explained hereafter, we find we are without jurisdiction to hear appellant Clardy's appeal from that dismissal[2] and we affirm the district court's judgment with respect to appellant Tucker.[3]
 
 
 2
 I. Facts.
 
 
 3
 Prison authorities placed appellant Clardy in segregation at McNeil on October 30, 1974 for the assault of another inmate occurring on October 27, 1974. On November 4, 1974, he received an Incident Report stating that he was suspected of assault. When brought before the McNeil Island Adjustment Committee on January 31, 1975, for a hearing on the charge, he denied his guilt and asked to be represented by counsel. The committee, composed of unspecified prison employees, found Clardy guilty of assault and recommended referral of the matter to the Institutional Discipline Committee. The Institutional Discipline Committee met with Clardy on February 5, 1975, and Clardy again denied his guilt and also asked to confront the witnesses against him. The Discipline Committee found him guilty and ordered forfeiture of 212 days good-time, continued his segregation, and recommended his transfer to another institution.
 
 
 4
 Appellant Tucker was placed in segregated confinement at McNeil on October 27, 1974, as a consequence of the same assault. The Incident Report furnished him on November 4, 1974, specified that he was suspected of assault. His segregated confinement continued pending completion of a FBI investigation and was intended to protect witnesses to the assault. On December 3, 1974, Tucker was informed that he would be brought before the Adjustment Committee. This committee met with Tucker on January 31, 1975. Tucker refused to plead to the charge because he was told that he would not be permitted to confront adverse witnesses and because he desired legal representation. On the basis of the investigative reports, the Adjustment Committee concluded that Tucker was guilty and referred the matter to the Institutional Discipline Committee with recommendations. The Discipline Committee gave him a hearing on February 5, 1975, during which they denied him legal counsel and an opportunity to cross-examine adverse witnesses and found him guilty. They approved the recommendations of the Adjustment Committee that Tucker's good-time be forfeited and that he be transferred. Tucker has continued in segregation since that time. He has utilized all available channels within the Bureau of Prisons to obtain relief from these disciplinary measures and his administrative appeals have been rejected.
 
 
 5
 Mindful of this factual background, we turn first to appellants' claim that the provisions of the APA apply to prison disciplinary proceedings and second to appellant Tucker's assertion that he was denied procedural due process during his hearing.
 
 
 6
 II. Applicability of the Administrative Procedure Act to Prison Disciplinary Proceedings.
 
 
 7
 On first encounter, appellant's contention that the APA, particularly 5 U.S.C. §§ 554, 555, 556 and 557, is applicable to disciplinary proceedings in federal prisons is unquestionably surprising and, no doubt to some, absurd. No federal court has ever made such a holding. The contention, however, turns out to have more substance than one might have thought possible.
 
 
 8
 To do it justice it should be set out reasonably fully. The bedrock of appellants' position is 5 U.S.C. § 551 wherein, for the purpose of the APA, the term "agency" is defined to mean "each authority of the Government of the United States, whether or not it is . . . subject to review by another agency, . . . ." Appellants point out that neither the Department of Justice nor the Bureau of Prisons, a bureau within the Department, is specifically excepted from the definition of an "agency," as are such authorities as Congress and the courts. Thus, the Bureau of Prisons is an "agency" runs appellants' argument.
 
 
 9
 Building on this foundation, they move to 5 U.S.C. § 554 which imposes certain procedural requirements, such as timely notice and opportunity to submit contrary views, "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing . . . ." This section is applicable to appellants' disciplinary proceedings, they insist, because they involved an "adjudication" which was required by "statute" in "an agency hearing." Appellants point out quite correctly that under Wong Yang Sung v. McGrath, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950) hearings compelled by reason of the due process Fifth Amendment requirements are treated for purposes of 5 U.S.C. § 554 as required by " statute." This requirement only exempts "hearings of less than statutory authority, not those of more than statutory authority." Id. Appellants apply this teaching of Wong Yang Sung to their case by pointing out that it follows from such cases as Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), that prisoners in federal facilities operated by the Bureau of Prisons are entitled under the Fifth Amendment to some type of hearing in discipline matters. Thus, for the purpose of 5 U.S.C. § 554 the "required by statute" condition is met.
 
 
 10
 The remainder of appellants' argument moves swiftly. 5 U.S.C. § 555, captioned "Ancillary matters," which permits a "person compelled to appear in person before an agency" to be accompanied by counsel, is clearly applicable because a prisoner seldom appears at disciplinary proceedings voluntarily and such proceedings are an "adjudication" which is "required by statute" by an "agency." Cf. 5 U.S.C. § 554. The provisions of 5 U.S.C. § 556 are applicable to disciplinary proceedings because they are explicitly keyed to sections 553 and 554. Furthermore, the rules under which the hearings proceed must be promulgated in accordance with section 553.
 
 
 11
 This marshalling of the APA's statutory materials is strengthened by appellants pointing to two recent cases in the District of Columbia Circuit in which the court held 5 U.S.C. § 553 applicable to the Board of Parole, Pickus v. United States Board of Parole, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974) and the Bureau of Prisons, Ramer v. Saxbe, 173 U.S.App.D.C. 83, 522 F.2d 695 (1975). Cf. King v. United States, 492 F.2d 1337 (7th Cir. 1974).
 
 
 12
 Appellants' argument is technically impressive. Moreover, there are numerous features of the APA that, to promote the general interest of due process could be, and perhaps already are, incorporated into prison disciplinary procedures without difficulty. Thus, certain portions of information required to be made public by 5 U.S.C. § 552, prompt notice of the disposition of a prisoner's request in a disciplinary proceeding pursuant to 5 U.S.C. § 555(e), and timely notice of the time, place, and nature of the hearing, 5 U.S.C. § 554(b)(1), are not incompatible with prison disciplinary proceedings. Undoubtedly there are other provisions of the APA that fall into the same category.
 
 
 13
 On the other hand, it is also true that the formality envisioned by 5 U.S.C. § 554(b)(c)(d) and (e) and the provision for counsel in 5 U.S.C. § 555 are not suited for various reasons to disciplinary proceedings of the Bureau of Prisons. The same can be said for most of 5 U.S.C. § 556 and § 557. In addition, history strongly suggests that the APA was not intended to apply to such proceedings. See Allen v. Aytch, 535 F.2d 817, 822 n. 23 (3rd Cir. 1976). See also Daughtery v. Harris, 476 F.2d 292 (10th Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Sullivan v. Ciccone, 311 F.Supp. 456 (W.D.Mo.1970); Lesser v. Humphrey, 89 F.Supp. 474 (M.D.Pa.1950). Prior to Pickus, Ramer and King the authorities uniformly rejected an application of the APA to the Board of Parole. See Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 236-237 (1963); Washington v. Hagan, 287 F.2d 332 (3rd Cir. 1960). Of particular significance is the fact the Supreme Court, during the same term it decided Wong Yang Sung, affirmed, by an equally divided vote, Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1949), which held the APA inapplicable to the Parole Board. 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950).
 
 
 14
 Two other revealing bits of history are inconsistent, to some degree, with appellants' arguments. The first is that six months after the Supreme Court in Wong Yang Sung held the APA applicable to deportation proceedings, Congress changed the law and made inapplicable to such proceedings sections 554, 556, and 557 of the APA.[4] More recently Congress responded to Pickus by carefully excluding from the scope of the APA all functions of the new Parole Commission other than the rule-making process.[5]
 
 
 15
 Perplexing, nonetheless, is the fact that in the legislative history of the APA there is little to suggest that unexpressed exceptions to its coverage exist. For example, the House Report said:
 
 
 16
 "The bill is meant to be operative 'across the board' in accordance with its terms, or not at all. Where one agency has been able to demonstrate that it should be exempted, all like agencies have been exempted in general terms."
 
 
 17
 H.Rep. No. 1980, 79th Cong., 2d Sess. 16 (1946).
 
 
 18
 Although it is hard to fashion a foothold for exempting an agency in the following passage, it is true that in this same report appears the following:
 
 
 19
 "Manifestly the bill does not unduly encroach upon the needs of any legitimate government operation, although it is of course operative according to its terms even if it should cause some administrative inconvenience or changes in procedure." Id.
 
 
 20
 Perhaps this passage can be made to support the holding that the APA countenanced unexpressed exemptions of agencies as well as authority to apply its terms to selected functions of agencies.
 
 
 21
 Be that as it may, it is a fact that from 1946 to the present the Bureau of Prisons has indicated its firm belief that it was not governed by the APA.[6] It is also true that Congress during this period has not enacted legislation designed to bring the Bureau under the procedures of the APA. This inactivity on the part of Congress contrasts sharply with the bustle of federal courts in the prison discipline area. We have already referred to Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In both of these cases the Court recognized that prisoners are entitled to protections that have their sources in the Due Process Clause. 418 U.S. at 556, 94 S.Ct. 2963; 425 U.S. at 314-23, 96 S.Ct. at 1556-60. These protections, however, are fashioned to fit comfortably with the exigencies of prison management. Thus, the Court held that due process does not require that prisoners be accorded an unrestricted right to call witnesses, the assistance of counsel, or the right of confrontation and cross-examination in prison disciplinary proceedings. This is in keeping with the view "that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." 418 U.S. at 560, 94 S.Ct. at 2977. Our circuit, as well as others, has also engaged itself in the task of making due process rights a reality in our prisons, both state and federal.[7]
 
 
 22
 From this data, both legal and historical, we draw these conclusions. First, the courts are presently engaged in fashioning the due process rights of prisoners in a manner that does not impair the ability to administer prisons. As the Supreme Court indicated in both Wolff and Baxter this process is by no means finished. Rather it is evolving. Second, the precedents, with few exceptions, indicate that the APA is inapplicable to prison discipline. Whether this can be done, as in Hyser v. Reed, supra, by finding prison disciplinary proceedings, like Hyser's parole revocation proceedings, not to be an adjudication, such as is required to activate 5 U.S.C. §§ 554, 556, 557 and also probably § 555, or by some other means is not important. The fact remains that only recently have decisions appeared suggesting that the Department of Justice in prison discipline matters has ignored the APA for years.
 
 
 23
 Our third conclusion is that the most casual reading of the APA will indicate that it was not written with prison disciplinary proceedings in the forefront of the draftsman's mind. Such sentences (which have been chosen almost at random) as "In fixing the time and place for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives," and "A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative," require a dash of mordant humor to imagine their undistorted application to a prison setting. The plain and simple fact is that the APA was not written with the problems of prison discipline in mind. The safeguards erected therein when applied comprehensively will unduly inhibit prison management.
 
 
 24
 Thus, we come to the issue before us. To hold as the appellants suggest, that the APA is applicable to prison disciplinary proceedings, would have respectable support in the precedents. Also we believe it would induce Congress to act quickly to overturn our decision and perhaps to write into law rules pertaining to disciplinary hearings in federal prisons.
 
 
 25
 On the other hand, to fail to hold the APA applicable to federal prison disciplinary proceedings will permit the continuation of the evolution that currently is taking place in the federal courts. This course perhaps will not be as an effective spur to Congressional action as would be its opposite.
 
 
 26
 We grasp this nettle and hold that the APA is not applicable to federal prison disciplinary proceedings. Our desire to avoid confusion and uncertainty in the administration of the Bureau of Prisons and to permit continuation of the judicial evolution in this area overcomes our desire to invoke the assistance of Congress. Thus, we dismiss for lack of jurisdiction appellant Clardy's appeal, and turn now to appellant Tucker's due process claim.
 
 
 27
 III. Assistance of Counsel in Prison Disciplinary Proceedings.
 
 
 28
 Appellant Tucker, relying on our decision in Clutchette v. Procunier,497 F.2d 809 (9th Cir. 1974), on rehearing, 510 F.2d 613 (9th Cir. 1975), contends that by denying his request for counsel the prison authorities abridged his right to procedural due process. The Supreme Court reversed this decision in Baxter v. Palmigiano, supra, and held that inmates do not have a right to counsel in prison disciplinary proceedings. Their holding forecloses Tucker's argument, and we are constrained to follow it.
 
 
 29
 We affirm the district court's dismissal of appellant Tucker's petition.
 
 
 
 *
 Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Both have subsequently been convicted in United States District Court of assault with intent to commit murder, and have criminal appeals currently pending before this court
 
 
 [2]
 Judge William N. Goodwin, United States District Judge for the Western District of Washington, dismissed appellant Clardy's complaint without prejudice for failure to exhaust administrative remedies. An order dismissing a complaint but not the action is not final and appealable under 28 U.S.C. § 1291 (1970) unless special circumstances clearly indicate that the action could not be saved by any amendment which the plaintiff could reasonably be expected to make. Jackson v. Nelson, 405 F.2d 872 (9th Cir. 1968); Ruby v. Secretary of Navy, 365 F.2d 385 (9th Cir. 1966), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967). If, as he now asserts, appellant Clardy was able to document his alleged utilization of all available administrative appeals, he should also have been able to elaborate on his conclusory allegation of complete compliance below
 Appellant Clardy claims that he need not exhaust his administrative remedies because the Bureau of Prisons failed to provide by rule pursuant to the Administrative Procedure Act, 5 U.S.C. § 704 (1970) that the disciplinary measures imposed on him would remain inoperative while he pressed his administrative appeals. Therefore, we must decide whether the APA applies to prison disciplinary proceedings in order to rule on his claim.
 
 
 [3]
 Judge Goodwin dismissed appellant Tucker's complaint on the ground that Tucker's subsequent criminal conviction for the same assault mooted his assertion that he was denied procedural due process at the hearing. Judge Goodwin also rejected Tucker's contention that the APA is applicable to such hearings. The criminal case, however, did not resolve the issues presented by the disciplinary hearing, nor did the criminal penalty either remove or replace the administrative measures taken. Thus, his petition is not moot, and we may properly review the issues he raises on appeal. Jurisdiction to hear his appeal is based on 28 U.S.C. § 1291 (1970)
 
 
 [4]
 Supplemental Appropriation Act of 1951, 64 Stat. 1048. See Marcello v. Bonds, 349 U.S. 302, 306, 75 S.Ct. 757, 99 L.Ed. 1107 (1955)
 
 
 [5]
 See Parole Commission and Reorganization Act § 2, 18 U.S.C.A. § 4218 (Supp.1976)
 
 
 [6]
 Letter from James V. Bennett, Director, Bureau of Prisons, to S. A. Andretta, Administrative Assistant to the Attorney General, July 29, 1946; Letter from James V. Bennett, Director, Bureau of Prisons, to Frederick W. Ford, Acting Assistant Attorney General, December 5, 1956
 
 
 [7]
 Seawell v. Rauch, 536 F.2d 1283 (9th Cir. 1976); Lokey v. Richardson, 527 F.2d 949 (9th Cir. 1975), vacated, --- U.S. ----, 96 S.Ct. 3186, 49 L.Ed.2d ---- (1976). See, e. g., Kirby v. Blackledge, 530 F.2d 583 (4th Cir. 1976); Crooks v. Warne, 516 F.2d 837 (2d Cir. 1975); La Batt v. Twomey, 513 F.2d 641 (7th Cir. 1975); Gomes v. Travisono, 510 F.2d 537 (1st Cir. 1974); Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974); Meyers v. Alldredge, 492 F.2d 296 (3rd Cir. 1974)