FILED
United States Court of Appeals
Tenth Circuit

February 9, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MARK JORDAN,

      Petitioner-Appellant,

v.

R. WILEY, Warden.

      Respondent-Appellee.

No. 09-1355
(D. Colo.)
(D.C. No. 06-cv-02090-WYD)

---

## ORDER AND JUDGMENT[*]

---

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

Petitioner-Appellant Mark Jordan appeals from the district court's order

denying his 28 U.S.C. § 2241 petition. Proceeding pro se,[1] Mr. Jordan brings

---

[*]      This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case, therefore, is ordered submitted without oral argument. To the extent that Mr. Jordan requested the appointment of counsel to represent him at oral argument, that request is **DENIED as moot**.

[1]      Because Mr. Jordan proceeds pro se, we construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Ledbetter v. City of Topeka*, 318

(continued...)

three claims on appeal arising from a Bureau of Prisons ("BOP") disciplinary action against him. Specifically, Mr. Jordan contends that the district court erred in concluding: (1) that BOP Code 203, which prohibits "threatening another with bodily harm," is not impermissibly vague as applied; (2) that his procedural due process rights were not violated by the disciplinary proceedings against him; and (3) that the BOP did not violate the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–06. Exercising our jurisdiction under 28 U.S.C. §§ 1291 and 2253, we reject all three claims and affirm the district court's denial of Mr. Jordan's habeas petition.

## I.    Background

When he commenced this action, Mr. Jordan was imprisoned at the United States Penitentiary Administrative Maximum Facility in Florence, Colorado,[2]

---

[1](...continued)
F.3d 1183, 1187 (10th Cir. 2003) (citing *Haines*). We do not, however, assume the role of advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Ledbetter*, 318 F.3d at 1187–88.

[2]     In May 2010, Mr. Jordan filed a change-of-address notice in which he informed us that he had been transferred to a federal penitentiary in Virginia. Subsequently, in late November 2010, Mr. Jordan filed a document, titled "Motion to Supplement Record," purportedly "to notice his release from the BOP Control Unit." Mot. to Supplement R. at 1 (internal quotation marks omitted). In this filing, Mr. Jordan reminded us of his transfer and offered a brief argument concerning the implications of that transfer for the vitality of his appeal. Specifically, Mr. Jordan noted that he was housed in a "BOP Control Unit" when he filed this action, *id.* (internal quotation marks omitted); that this housing "placement was the result of the challenged disciplinary conviction," *id.*; and that part of the relief that he had initially sought was "an order directing his release

(continued...)

having been convicted in 1995 of armed bank robbery and in 2005 of murder and other related offenses stemming from his fatal stabbing of a fellow inmate while imprisoned. The disciplinary proceedings that Mr. Jordan challenges arose from an incident that occurred on October 3, 2005, while Mr. Jordan was housed in the Special Housing Unit in solitary confinement. On that date, Mr. Jordan asked Officer Shawn P. Quenelle if he could make a telephone call. Officer Quenelle did not permit Mr. Jordan to do so because he had not submitted a written request and too many calls had already been scheduled. According to Officer Quenelle, who was standing in close proximity to Mr. Jordan's cell at the time, Mr. Jordan then stated, "this is the kind of stuff that makes me want to stab someone." R.,

---

[2](...continued)
from the BOP Control Unit," *id.* (internal quotation marks omitted). Mr. Jordan informs us that "since the completion of briefing in this appeal he has been released from the Control Unit and transferred to another facility in the BOP." *Id.* Mr. Jordan seems to acknowledge that in light of the foregoing developments we are no longer situated to grant him relief with respect to Control Unit placement and, to that extent, his action is moot. However, Mr. Jordan vigorously asserts that his action is not "otherwise moot" because "he continues to suffer . . . the disallowance of good conduct time credit in which he possesses a protected liberty interest as a result of the assertedly unlawful disciplinary proceedings." *Id.* at 1–2. We agree. Mr. Jordan's transfer did not moot the remainder of this appeal. *See Ross v. Mebane*, 536 F.2d 1199, 1201 (7th Cir. 1976) (per curiam) (noting that an action was "not moot" where a prisoner was transferred to another federal prison facility after filing his habeas action for alleged wrongful denial of good time credits because the prisoner's "good-time credits [had not] been restored"); *cf. Warnick v. Booher*, 425 F.3d 842, 846 (10th Cir. 2005) ("The Warden has conceded the error of the original 155-credit reduction, so there is nothing left for judicial resolution on that matter. Accordingly, the district court's ruling has been mooted insofar as it concerns the original reduction."). We therefore proceed to address the merits of his appeal and, insofar as Mr. Jordan's motion to supplement can be construed to seek that relief, we **GRANT** it.

-3-

Vol. I, at 44 (Incident Report, dated Oct. 4, 2005).

On October 4, 2005, Officer Quenelle filed an incident report against Mr. Jordan, charging him with "threatening another with bodily harm" in violation of BOP Code 203. After an investigation, the incident report was referred to the Unit Disciplinary Committee ("UDC"), which held a hearing on October 6, 2005. Mr. Jordan provided a written statement to the UDC, in which he asserted that the incident report should be referred to a Disciplinary Hearing Officer ("DHO"). He also requested a particular staff representative and asked that Officer Quenelle and other prison officials appear before the DHO as witnesses. The UDC determined that Mr. Jordan had threatened another with bodily harm, referred the charges to the DHO for further hearing, and recommended that the DHO impose a sanction of disciplinary segregation if it found that Mr. Jordan was guilty of the charge. The UDC provided Mr. Jordan with written notice of the DHO hearing and an explanation of his rights.

The DHO held a hearing on December 21, 2005, which Mr. Jordan attended. Mr. Jordan submitted a written statement to the DHO along with the written statement of fellow inmate George Scalf, who was housed next to Mr. Jordan at the time of the incident. Mr. Jordan alleged that Mr. Scalf had made the statement at issue[3] and Mr. Scalf's written statement to the DHO corroborated Mr.

---

[3]     Mr. Jordan alleged that Mr. Scalf made a slightly different statement than that attributed to Mr. Jordan. He contended that Mr. Scalf stated that "[i]t's
(continued...)

Jordan's version of the events.  The DHO did not allow Mr. Jordan to call the witnesses that he had requested because he determined that those witnesses had not directly observed the incident.  The DHO concluded that Mr. Jordan had made the statement and was guilty of violating Code 203.  He imposed a sanction of thirty days of disciplinary segregation and a reduction of twenty-seven days of good-time credit.

After Mr. Jordan was given a copy of the DHO's report on April 28, 2006, he appealed to the North Central Regional Office, arguing that his disciplinary conviction was obtained in violation of both his Fifth Amendment right to due process and the APA.  The Regional Director rejected his appeal on June 9, 2006, and Mr. Jordan appealed to the Central Office.  That appeal was denied on September 9, 2006.

Mr. Jordan filed a § 2241 petition with the United States District Court for the District of Colorado on October 20, 2006, challenging the BOP's disciplinary proceedings against him.  In his petition, Mr. Jordan argued that:  (1) the prison regulation at issue, Code 203, was impermissibly vague as applied, in violation of his due process rights under the Fifth Amendment; (2) the disciplinary proceedings against him violated his procedural due process rights under the Fifth Amendment; and (3) the disciplinary proceedings violated the APA.  Respondent

---

[3](...continued)
that kind of shit that makes a motherfucker want to stab up some shit."  R., Vol. II, at 132 (Order on Pet. for Habeas Corpus, filed June 17, 2009).

argued that Mr. Jordan had failed to exhaust his administrative remedies with respect to his vagueness challenge and his APA claim, and challenged the merits of Mr. Jordan's claims.

The district court determined that Mr. Jordan had properly exhausted all of his administrative remedies. The court then addressed Mr. Jordan's claims on their merits, and ultimately denied his habeas petition. First, the court held that Code 203 provided fair warning of the prohibited conduct and that Mr. Jordan "should have realized that his statement to a prison official standing directly outside of his cell door that, '[t]his is the kind of stuff that makes me want to stab someone,' could constitute a violation of Code 203." R., Vol. II, at 139. The court also determined that the disciplinary proceedings did not violate Mr. Jordan's Fifth Amendment due process rights because: Mr. Jordan had the opportunity to present all relevant evidence; the DHO's decision was supported by written statements from two BOP officers; Mr. Jordan's rights were not violated by the quality of representation provided by the staff representative because he did not have a constitutional right to assistance during the disciplinary process; assuming, *arguendo*, that Mr. Jordan was denied access to an officer's investigatory memorandum, any such denial had no impact on Mr. Jordan's ability to defend himself; and Mr. Jordan did not present a meritorious retaliation claim because he "d[id] not have a protected interest in 'jailhouse lawyering,'" and thus could not assert a due process/retaliation claim on that basis. *Id*. at 150. Finally,

the court held that Mr. Jordan's disciplinary conviction did not violate the APA because it was supported by "some evidence" and, therefore, was not arbitrary and capricious. The district court accordingly entered judgment denying Mr. Jordan's petition on June 18, 2009.

On June 26, 2009, Mr. Jordan filed a Motion to Alter or Amend Judgment, in which he argued that the district court had misconstrued his statutory claim because he had *not* brought it under the APA. Consequently, he contended that his statutory claim should have been reviewed "*independent of the APA*" rather than under the arbitrary and capricious standard. R., Vol. II, at 156, 158 (Mot. to Alter or Amend J.). However, Mr. Jordan did not identify precisely what standard *did* apply. The court denied the motion because it determined that Mr. Jordan did not state a claim for relief under Federal Rule of Civil Procedure 59(e), concluding that Mr. Jordan had merely "rais[ed] the same arguments previously asserted in [his Habeas] Application." R., Vol. II, at 236 (Order, filed Aug. 25, 2009).

This appeal followed. The district court granted Mr. Jordan leave to proceed *in forma pauperis*.

## II. Discussion[4]

---

[4] As a preliminary matter, we note that the issue of exhaustion of administrative remedies is not before us. The BOP has not challenged the district court's determination that Mr. Jordan properly exhausted the available administrative remedies as to all of his claims. We therefore proceed to address

(continued...)

## A.    Standard of Review

In reviewing a district court's denial of a petition under 28 U.S.C. § 2241, "we review legal issues de novo, and factual findings for clear error." *United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008) (citations omitted).

## B.    Vagueness Challenge to Code 203

Mr. Jordan first argues that the district court erred in concluding that BOP Code 203 was not impermissibly vague as applied to him in light of the BOP's past and present interpretations of the Code. Code 203, which is set forth in 28 C.F.R. § 541.13, Table 13, prohibits inmates from "[t]hreatening another with bodily harm or any other offense." Mr. Jordan contends that the BOP's practice was to limit the Code's application to credible threats directed toward an individual. Specifically, he argues that the BOP did not apply Code 203 more broadly to threatening statements. Mr. Jordan argues that the statement at issue was not a credible threat directed toward an individual. Although "Mr. Jordan denies making the statement, he . . . concede[s] that for purposes of the vagueness analysis the court assumes [that] he uttered it." Aplt. Opening Br. at 21. However, Mr. Jordan contends that the district court erred in determining that a prison official was standing directly outside of his cell door. Mr. Jordan urges us to find that the BOP officers were exiting the area when the statement was made

---

and, consequently, to conclude that the statement was not directed toward the officers and could not have been interpreted as a credible threat. To the extent that the dispute over the location of the officers is material, Mr. Jordan argues that "it was improper for the district court to resolve the dispute without [a] hearing." *Id.*

A BOP regulation may be impermissibly vague if it either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Jordan v. Pugh*, 425 F.3d 820, 824–25 (10th Cir. 2005) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)) (internal quotation marks omitted). Vagueness challenges that are not based on the First Amendment, such as the instant challenge,[5] are evaluated in light of the particular

---

[5]     Mr. Jordan brings this vagueness challenge under the Fifth Amendment's due process guarantee. Although Mr. Jordan attempts to argue on appeal that his claim implicates the First Amendment, Aplt. Opening Br. at 23 n.5, he failed to raise this issue before the district court. Consequently, Mr. Jordan has waived any First Amendment argument. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009). Moreover, not only did Mr. Jordan fail to raise a First Amendment claim before the district court, he *explicitly rejected* such a claim. In his Traverse, Mr. Jordan stated that "he does not in this case allege that his First Amendment free speech rights have been violated." R., Vol. II, at 21 n.10 (Traverse, filed Jan. 30, 2007). We therefore will not address that argument. As we have previously held, a prisoner's pro se status does not excuse him from failing to present an argument to the district court. *See Velasquez v. Astrue*, 301 F. App'x 778, 779 (10th Cir. 2008); *see also Lewis v. Booker*, No. 99-3092, 1999 WL 638239, at *1 n.1 (10th Cir. Aug. 23, 1999); *Gross v. United States*, No. 96-1351, 1997 WL 157387, at *1 (10th Cir. Apr. 4, 1997). Thus, Mr. Jordan has

(continued...)

circumstances of the case on an as-applied basis. *United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1114 n.7 (10th Cir. 2007) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)).

The district court focused on whether Code 203 provided "fair warning" of the prohibited conduct. It determined that "Code 203 clearly sets forth the conduct prohibited by the regulation. By its plain terms, it prohibits threatening another person with either bodily harm or any other offense." R., Vol. II, at 139. Accordingly, the court held that Mr. Jordan had sufficient notice that his statement that "[t]his [was] the kind of stuff that made [him] want to stab someone" might violate Code 203. *Id.*

We agree with the district court's analysis. We also conclude that it was not clear error for the district court to find that Officer Quenelle was standing directly outside of Mr. Jordan's cell door based on the officer's own statements. Moreover, we agree with the district court's legal conclusion regardless of Officer Quenelle's exact location. Whether Officer Quenelle was in the process of leaving the cell area, standing in the open door to Mr. Jordan's cell, or standing in the sally port (fortified entryway) of Mr. Jordan's cell, the evidence clearly establishes that he was close enough to Mr. Jordan to hear the threatening statement; thus, an evidentiary hearing to determine Officer Quenelle's precise

------

[5](...continued)
waived any First Amendment vagueness claim.

location was unnecessary. Accordingly, for substantially the same reasons articulated by the district court, we hold that Code 203 is not impermissibly vague as applied to Mr. Jordan.

### C. Procedural Due Process Challenge

Mr. Jordan also contends that the district court erroneously concluded that his procedural due process rights were not violated by the BOP disciplinary proceedings against him. Mr. Jordan claims that the BOP violated his procedural due process rights in the following ways: (1) he was not provided with one of the BOP officers' written statements before the DHO hearing and his inability to access that evidence deprived him of the opportunity to prepare his defense; (2) his staff representative rendered inadequate assistance in failing to identify and interview witnesses, particularly because Mr. Jordan was in solitary confinement throughout the disciplinary proceedings and could not do so himself; (3) he was denied the right to call witnesses; (4) the DHO was biased in favor of BOP witnesses and presumed that they all were credible; and (5) the DHO failed to consider the evidence that Mr. Jordan presented before rendering judgment.

It is well-settled that an inmate has a protected liberty interest in good-time credits and that those credits may not be revoked without the minimal procedural safeguards afforded by the Due Process Clause. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007); *see also Superintendent, Mass. Corr. Inst.*, *Walpole v. Hill,* 472 U.S. 445, 453–56 (1985); *Wolff v. McDonnell*, 418 U.S.

539, 563–67 (1974).  The Supreme Court has enumerated those minimum

safeguards as follows:

> *Wolff* held that the inmate must receive:  (1) advance
> written notice of the disciplinary charges; (2) an
> opportunity, when consistent with institutional safety and
> correctional goals, to call witnesses and present
> documentary evidence in his defense; and (3) a written
> statement by the factfinder of the evidence relied on and
> the reasons for the disciplinary action.

*Hill*, 472 U.S. at 454 (discussing *Wolff*, 418 U.S. at 563–67); *see also Mitchell v.*

*Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).  Additionally, to comport with the

minimum procedural due process requirements, the findings of the prison

disciplinary board must be supported by "some evidence in the record."  *Hill*, 472

U.S. at 454–57; *accord Mitchell*, 80 F.3d at 1445.

Although Mr. Jordan does not frame his arguments according to the *Wolff*

standards, he does not dispute that he received advance written notice of the

charges against him or that the DHO issued a written statement explaining the

reasons for the disciplinary action and citing the evidence upon which it had

relied.  Mr. Jordan's arguments instead appear to relate to his opportunity to

present evidence and the sufficiency of the evidence that supports the DHO's

finding.  *See Mitchell*, 80 F.3d at 1445 ("Our review, however, is limited to

whether the three steps mandated by *Wolff* were followed and whether there was

some evidence to support the disciplinary committee's findings.").  We address

each of Mr. Jordan's claims in turn.

### 1.    Opportunity to Present Evidence

We read the following arguments raised by Mr. Jordan as falling under the *Wolff* standard concerning the opportunity to present evidence: Mr. Jordan allegedly was not provided with a written statement from Officer Wilfredo Nestegard, which impaired his ability to prepare a defense; his staff representative allegedly failed to help him gather evidence and interview witnesses; and the DHO did not permit him to call certain witnesses.  For substantially the same reasons set forth by the district court, we conclude that Mr. Jordan had an opportunity to present witnesses and documentary evidence to the DHO.

First, the district court rejected Mr. Jordan's contention that he was denied access to Officer Nestegard's written statement concerning the incident and that this impaired his ability to prepare a defense.  Assuming, *arguendo,* that Mr. Jordan did not receive a copy of Officer Nestegard's written statement (a fact that Respondent disputes), the court concluded that Mr. Jordan's due process rights were not violated because Officer Nestegard's statement "d[id] not contain any information that [was] not already provided in the incident report, other than the mere fact that Officer Nestegard also witnessed [the] incident."  R., Vol. II, at 149.  The court further found that "it [was] apparent that [Mr. Jordan] was already aware that Officer Nestegard was present on the SHU range during the incident, and[,] therefore, could effectively defend against this officer's testimony without access to the [statement]."  *Id.*

-13-

Mr. Jordan argues on appeal that the district court clearly erred in concluding that Mr. Jordan was already aware of Officer Nestegard's presence during the incident. He does not, however, challenge the court's finding that Officer Nestegard's written statement merely reiterated the information already contained in the incident report. We have reviewed Officer Nestegard's statement, and we agree with the district court's conclusion that, even if Mr. Jordan was denied access to the statement prior to the DHO hearing, this had no impact on his ability to prepare a defense. Officer Nestegard's statement and the incident report relay the same information, and Mr. Jordan had access to the report. Moreover, Mr. Jordan was aware that another officer was present during the incident, even if he did not know that officer's identity. We therefore conclude that the record contains no evidence that Mr. Jordan's ability to "marshal the facts in his defense" was somehow impaired. *Wolff*, 418 U.S. at 564.

As to Mr. Jordan's claim that his staff representative failed to help him gather evidence and interview witnesses, the district court held that an inmate does not have a general constitutional right to representation during the disciplinary process. The court further concluded that due process requires that an inmate receive assistance from a staff representative only where the inmate is illiterate or the issue is so complex that it is unlikely that the inmate will be able to collect and present the necessary evidence. The court found that those factors were not applicable to Mr. Jordan. We agree. We find it significant that Mr. Jordan

-14-

received assistance from the BOP staff representative of his choice, even though due process principles clearly did not oblige the prison to provide him with such assistance. *See Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976); *Wolff*, 418 U.S. at 570; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). Mr. Jordan has no viable due process claim about the quality of assistance that he received from the staff representative.

The district court also rejected Mr. Jordan's claim that the DHO did not permit him to call certain witnesses, thereby violating his due process rights. However, the right to call and present witnesses under *Wolff* is not absolute— "rather[,] it is 'circumscribed by the necessary mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Howard*, 487 F.3d at 812 (quoting *Baxter*, 425 U.S. at 321). "And while prison officials must consider an inmate's request to call or confront a particular witness . . . on an individualized basis, errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." *Id.* at 813 (omission in original) (citations omitted) (internal quotation marks omitted).

On appeal, Mr. Jordan challenges the DHO's refusal to call Officer Nestegard, various witnesses who did not directly observe the incident, and other unnamed inmates who were allegedly nearby at the time at the incident. With regard to Mr. Jordan's request to call Officer Nestegard as a witness, the district

court concluded that because the officer provided a written statement to the DHO, Mr. Jordan's "claim that he was denied the ability to call this witness is at best no more than a claim of harmless error, as any information that this officer possessed was before the DHO."[6] R., Vol. II, at 143. We agree. As for the other witnesses requested by Mr. Jordan, the district court adopted the DHO's finding that Mr. Jordan "ha[d] made no showing that the testimony of [the remaining requested] witnesses was in any way relevant to the issue of whether he stated to Officer Quenelle, '[t]his is the kind of stuff that makes me want to stab someone,'" because they were not present during the incident. R., Vol. II, at 144. Mr. Jordan has not established that this finding was clearly erroneous. Moreover, we conclude that any error by the DHO in excluding those witnesses was harmless on account of Mr. Jordan's failure to demonstrate the relevance of their testimony.[7]

---

[6] As the district court correctly noted, Mr. Jordan did not have a constitutional right to cross-examine Officer Nestegard even if he had testified in person before the DHO. *See Baxter*, 425 U.S. at 320–22; *Wolff*, 418 U.S. at 567–69; *see also Howard*, 487 F.3d at 812–13.

[7] It appears that the DHO and the district court determined that the other witnesses requested by Mr. Jordan, *including the unnamed fellow inmates*, were irrelevant because they did not witness the incident. Although Mr. Jordan argues that the DHO denied his request to call those inmates solely because he could not identify them by name, the record does not support that assertion. Regardless, because Mr. Jordan has not demonstrated that the testimony of those unnamed inmates would have affected the outcome of his case, any error by the DHO in refusing to call those witnesses was harmless. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).

Mr. Jordan also argued below that the excluded witnesses' testimony was
(continued...)

-16-

*See Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) ("[A] [BOP] hearing

officer does not violate due process by excluding irrelevant or unnecessary

testimony."). Consequently, we conclude that Mr. Jordan had an opportunity to

present witnesses and documentary evidence such that the minimum requirements

of procedural due process were satisfied.

###### 2. The Existence of Some Evidence to Support the Conviction

We interpret Mr. Jordan's remaining arguments as challenges to the district

court's conclusion that there was "some evidence" to support his disciplinary

conviction. *See Hill*, 472 U.S. at 454–57; *Mitchell*, 80 F.3d at 1445.

"Ascertaining whether this standard is satisfied does not require examination of

the entire record, independent assessment of the credibility of witnesses, or

weighing of the evidence. Instead, the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the

disciplinary board." *Hill*, 472 U.S. at 455–56. "A disciplinary board's decision

---

[7](...continued)
relevant to his retaliation claim—that is, his theory that the disciplinary charge
was falsified by BOP officials in retaliation for his "jailhouse lawyering
activities." R., Vol. I, at 11, 17–19 (Application for A Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2241, filed Oct. 20, 2006); R., Vol. II, at 144. The
district court rejected that claim, and Mr. Jordan does not challenge the court's
conclusion on appeal. Respondent argues that Mr. Jordan has therefore waived
his retaliation claim, and Mr. Jordan does not dispute that assertion; thus, we are
confident Mr. Jordan has intentionally relinquished this claim on appeal. We
therefore treat any retaliation claim as waived (i.e., abandoned), and will not
consider it. *See, e.g.*, *United States v. Springfield*, 337 F.3d 1175, 1178 (10th Cir.
2003).

can be upheld by a reviewing court 'even if the evidence supporting the decision is meager.'" *Howard*, 487 F.3d at 812 (quoting *Mitchell*, 80 F.3d at 1445). That standard is easily met in this case. We find that Mr. Jordan's arguments are unpersuasive and conclude that there is "some evidence" in the record that supports his conviction.

In advocating for a contrary outcome, Mr. Jordan first contends that the DHO was biased in favor of BOP witnesses and had a "blanket policy" of presuming that they are credible.[8] Aplt. Opening Br. at 28. However, there is no evidence in the record that the DHO found that BOP witnesses were categorically credible; the record only indicates that the DHO concluded that they were credible *in this case*. In contrast, the DHO found Mr. Jordan's statements "unconvincing." R., Vol. I, at 67 (DHO Report, dated Apr. 10, 2006). It is not our role to independently assess witness credibility, and we will not do so here. *Hill*, 472 U.S. at 455–56.

Mr. Jordan also contends that the DHO failed to consider the evidence that he presented before it rendered judgment. Mr. Jordan argues that he submitted his own written statement to the DHO along with the statement of Mr. Scalf, but that "[t]he DHO pronounced the judgment and sanctions without reviewing that

---

[8] Though the district court did not analyze this issue directly, the court's order reveals that it considered and rejected Mr. Jordan's argument; the court specifically recounted the DHO's witness-credibility determinations before finding that Mr. Jordan's procedural due process rights had not been violated.

evidence." Aplt. Opening Br. at 29. The district court rejected this argument and determined that "it [was] apparent [from] the record that the DHO accepted and considered the statement from inmate Scalf . . . . The DHO also considered [Mr. Jordan's] statement describing his version of the facts." R., Vol. II, at 145. Having reviewed the DHO's report, we agree.

## D. APA Challenge

On appeal, Mr. Jordan argues that the disciplinary proceedings and his resulting conviction violated various BOP regulations in the following ways: (1) the discipline was capricious and retaliatory, in violation of 28 C.F.R. §§ 541.10(b)(4) and 541.12(1); (2) "the UDC improperly referred the charge to the DHO with indication of findings[,] in violation of 28 C.F.R. § 541.15(h)," Aplt. Opening Br. at 12; (3) his staff representative failed to provide the services required by 28 C.F.R. § 541.17(b) because he did not speak to witnesses or present evidence as Mr. Jordan requested; (4) the DHO refused to allow Mr. Jordan to submit certain documentary evidence, in violation of 28 C.F.R. § 541.17(c); (5) the DHO refused to allow Mr. Jordan to call certain witnesses, in violation of 28 C.F.R. § 541.17(c); (6) the DHO failed to consider documentary evidence submitted by Mr. Jordan prior to issuing its judgment, in violation of 28 C.F.R. § 541.17(f); and (7) because a BOP officer allegedly had informed Mr. Jordan that the conduct at issue was not sanctionable, the discipline violated 28 C.F.R. § 541.12(2).

Mr. Jordan contends that these regulations are "laws of the United States, violations of which are redressible and cognizable directly under authority of § 2241(c)(3)." Aplt. Opening Br. at 13. Mr. Jordan argues that the district court erred in analyzing these claims under the APA because he did not raise an APA claim below. Mr. Jordan admits that he "initially referenced the 'APA' in conjunction with these regulatory violations in [his habeas] [p]etition." *Id.* However, he contends that the district court should have construed his pro se filing liberally as presenting a claim subject to review apart from the APA. He therefore urges us to remand to the district court with instructions to review his claims under a de novo standard.

In the alternative, Mr. Jordan contends that the district court should have reviewed the alleged regulatory violations under *United States ex rel. Accardi v. Shaughnessy*, which held that an agency's failure to afford an individual the procedural safeguards required under its own regulations may result in the invalidation of its administrative determination. 347 U.S. 260, 268 (1954). Finally, Mr. Jordan contends that, even if review of the alleged regulatory violations was proper under the APA, the district court applied the incorrect standard of review. For the reasons discussed below, we conclude that we are precluded under the APA from reviewing substantive BOP disciplinary determinations involving the reduction of good-time credits and that Mr. Jordan has waived his other challenges to the BOP's implementation of its own

regulations.

We begin our analysis by clarifying which of Mr. Jordan's arguments concerning the BOP's regulations are reviewable on appeal. Our review of the record reveals that Mr. Jordan *only* argued in his habeas petition that the BOP had acted in a manner that was arbitrary, capricious, abused its discretion, or was otherwise in conflict with its own regulations *under the APA*. He did not contend that these arguments should be reviewed under any standard other than the APA. The district court's reading of Mr. Jordan's argument was accurate.

Mr. Jordan repeatedly cited to the APA and referenced its standard of review, arguing that the BOP acted in a manner that was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." R., Vol. I, at 32–35. Mr. Jordan even labeled the relevant section of his petition "APA Claims." *Id*. at 32. He reasserted these APA arguments in his Traverse and Response. Therefore, Mr. Jordan's APA challenge is the only issue properly before us on appeal.[9]

---

[9] Mr. Jordan did argue that the district court should have reviewed the BOP's alleged regulatory violations independently of the APA, but he did so for the first time in his Motion to Alter or Amend Judgement pursuant to Rule 59(e). A Rule 59(e) motion "cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment." *Steele v. Young*, 11 F.3d 1518, 1520 n. 1 (10th Cir.1993); *see also Grynberg v. Total, S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008). Given the timing of Mr. Jordan's presentation of this argument, we decline to consider it. *See Steele*, 11 F.3d at 1520 n.1 (declining to address an argument on appeal raised for the first time in a Rule 59(e) motion); *see also Holland v. Big River Minerals Corp.*, 181 F.3d 597,

(continued...)

The district court addressed Mr. Jordan's contention that the BOP had

violated the APA when it failed to follow its own regulations and concluded that

the BOP's decision to discipline Mr. Jordan was not arbitrary or capricious. More

---

⁹(...continued)
605 (4th Cir. 1999) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for appellate review . . . ."). Although pro se litigants' filings are interpreted liberally, "[t]his court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'" *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008); *Garrett*, 425 F.3d at 840; *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Furthermore, Mr. Jordan did not properly raise his argument concerning *Accardi* before the district court. As Respondent accurately contends, Mr. Jordan cited *Accardi* for the first time in his Traverse and Response, and he only developed his *Accardi* argument in his subsequent Motion to Alter or Amend Judgment. We will not consider an issue raised for the first time in a traverse because it was not properly before the district court—a point emphasized by the fact that the district court in this case did not address *Accardi*. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief. In order for the State to be properly advised of additional claims, they should be presented in an amended petition or, as ordered in this case, in a statement of additional grounds. Then the State can answer and the action can proceed."); *accord Loggins v. Hannigan*, 45 F. App'x 846, 849 (10th Cir. 2002) (relying on *Cacoperdo*); *Colby v. Thomas*, No. 95-2128, 1997 WL 57078, at *3 (10th Cir. Feb. 11, 1997); *cf. Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (a district court may decline to review a claim first raised in a traverse). This is, of course, similar to our treatment of arguments raised for the first time in a reply brief; because Mr. Jordan filed the traverse as a response to Respondent's brief before the district court, Respondent had no opportunity to reply to the traverse. *See United States v. Wayne*, 591 F.3d 1326, 1332 n.4 (10th Cir. 2010) (finding that an argument raised for the first time in a reply brief was waived on appeal); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (same).

specifically, the court determined that the DHO's determination that Mr. Jordan had violated Code 203 was supported by some evidence. R., Vol. II, at 151–53. After noting the dearth of relevant Tenth Circuit precedent and observing that "[neither party ha[d] identified the scope of the APA review to be used by the courts in reviewing prison disciplinary proceedings," the district court adopted the standard employed by courts in the Fifth Circuit in the prison discipline context. R., Vol. II, at 152–53 (relying in part on *Triplett v. Fed. Bureau of Prisons*, No. 3:08-CV-1252-K, 2009 WL 792799, at *9 (N.D. Tex. Mar. 24, 2009)). Under that standard, courts review BOP disciplinary proceedings and consider whether the disciplinary conviction is supported by "some facts" or "any evidence at all," which in turn determines whether the decision was arbitrary or capricious. *Id*. at 152–53. "As such, [the district court's] review of whether [Mr. Jordan's] prison disciplinary conviction was arbitrary and capricious in violation of the APA [wa]s limited to whether the conviction was supported by 'some evidence' as provided by the Supreme Court in *Hill*, 472 U.S. at 455–57." *Id*. The court "f[ound] it clear that [Mr. Jordan's] conviction was supported by 'some evidence' in the form of two written reports from prison officials" and that "this decision was not arbitrary and capricious." *Id*.

In discussing Mr. Jordan's APA claim, the district court cited to a Ninth Circuit case, *Clardy v. Levi*, 545 F.2d 1241 (9th Cir. 1976), which held that the APA was not applicable to BOP disciplinary proceedings. 545 F.2d at 1244–46.

Although it appears that the court did not rely upon *Clardy* in rejecting Mr. Jordan's claim under the APA, the court later cited the Ninth Circuit's holding in *Clardy* as providing an alternative ground for rejecting Mr. Jordan's argument.[10] *See* R., Vol. II, at 236. In reviewing Mr. Jordan's claim, we focus upon whether the APA applies to substantive disciplinary decisions involving the reduction of good-time credits and conclude that it does not.[11]

We have never directly decided in a precedential opinion whether the APA applies to substantive BOP disciplinary determinations involving the reduction of good-time credits. But we have suggested that 18 U.S.C. § 3625 likely precludes judicial review of such determinations. For example, in *Fristoe v. Thompson*, we stated that "[w]hile 18 U.S.C. § 3625 *may* preclude us from reviewing the BOP's substantive decision in appellant's case, it does not prevent us from interpreting the statute to determine whether the BOP exceeded its statutory authority." 144 F.3d 627, 630–31 (10th Cir. 1998) (emphasis added). In *Fristoe*, we evaluated the BOP's policy of relying both on sentencing enhancements and on the crime of conviction to determine whether an inmate was a nonviolent offender, such that he

---

[10] In addressing Mr. Jordan's Motion to Alter or Amend Judgment, the court acknowledged that it had rejected Mr. Jordan's APA claim on its merits, but stated that "[a]lternatively, [it] . . . noted that some courts have found that the APA is inapplicable to prison disciplinary proceedings." R., Vol. II, at 236 (Order, filed Aug. 25, 2009).

[11] We may affirm the district court on any basis supported by the record. *See, e.g.*, *Cordova v. Aragon*, 569 F.3d 1183, 1200 (10th Cir. 2009) (citing *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 n.17 (10th Cir. 2004)).

-24-

would be eligible for a sentence reduction upon successful completion of a residential substance abuse treatment program under 18 U.S.C. § 3621(e)(2)(B). We held that the BOP's reliance on sentencing enhancements conflicted with the plain language of the statute and that the BOP had exceeded its statutory authority. *Id.*

Thus, in *Fristoe,* we did not have occasion to resolve the question of whether we could review the BOP's substantive adjudicatory decisions or whether such review was precluded under 18 U.S.C. § 3625. This also was the case in *Hunnicutt v. Hawk*, 229 F.3d 997, 1000 (10th Cir. 2000), and *Ward v. Booker*, 202 F.3d 1249, 1254 n.5 (10th Cir. 2000),[12] both of which relied on *Fristoe.*[13] However, we conclude that *Fristoe*'s analysis—although it is brief—supports our reading of the plain terms of § 3625. We determine that the statute bars APA review of BOP substantive disciplinary determinations involving the reduction of good-time credits.[14]

---

[12]     The judgment in *Ward* was vacated on other grounds by *Booker v. Ward*, 531 U.S. 1108 (2001), and abrogated on other grounds by *Lopez v. Davis*, 531 U.S. 230 (2001).

[13]     We have addressed the issue on facts similar to *Fristoe* in unpublished, non-binding decisions. *See Redmon v. Wiley*, 349 F. App'x 251, 256 (10th Cir. 2009); *Taylor v. U.S. Bureau of Prisons*, No. 98-3176, 1999 WL 84249, at *2 (10th Cir. Feb. 22, 1999); *Crawford v. Booker*, No. 98-3167, 1998 WL 567963, at *2 (10th Cir. Sept. 3, 1998).

[14]     We note that the Ninth Circuit case cited by the district court for the proposition that the APA is inapplicable to BOP disciplinary proceedings, *Clardy*,

(continued...)

18 U.S.C. § 3625 exempts 18 U.S.C. §§ 3621–26 from the APA's judicial review provisions. Section 3625 provides that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter [§§ 3621–26]." Section 3625 therefore precludes judicial review of the BOP's adjudicative decisions affecting the computation of good-time credits, which is governed by 18 U.S.C. § 3624(b).[15]

Because the APA does not apply to substantive BOP disciplinary determinations involving the reduction of good-time credits, we may not review Mr. Jordan's claim—purportedly brought under the APA—that the BOP acted in a

---

[14](...continued)
*supra*, was decided in 1976, prior to the passage of § 3625 in 1984.

[15]     Section 3624(b) provides in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . . [I]f the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.

18 U.S.C. § 3624(b)(1) (2008).

way that was arbitrary, capricious, abused its discretion, or was otherwise not in accordance with the law. On the basis of this rationale, we uphold the district court's rejection of Mr. Jordan's third and final claim.

## III. Conclusion

For the foregoing reasons, we conclude that Code 203 is not impermissibly vague as applied to Mr. Jordan, that his procedural due process rights were not violated by the disciplinary proceedings against him, and that his claim concerning the APA is barred by 18 U.S.C. § 3625. Accordingly, we **AFFIRM** the district court's denial of Mr. Jordan's Section 2241 petition.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge